UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDRE NELSON-EL,

    Plaintiff,

    v.

MARLENE ELKINS-WATTS, et al.,

    Defendants.

CAUSE NO.: 3:19-CV-300-JD-MGG

OPINION AND ORDER

Andre Nelson-El, a prisoner without a lawyer, initiated this lawsuit by filing a complaint and a motion for a preliminary injunction. ECF 1, ECF 4. He later filed two motions to amend seeking leave to add several evidentiary documents. ECF 5, ECF 6. The court will grant the motions, which have been construed as a request to supplement his motion for injunctive relief, and has considered those documents accordingly in evaluating his claims.[1] "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A,

---

[1] Nelson-El also recently filed three affidavits with approximately fifty (50) pages of hand-written factual assertions purportedly in support of his original claims. ECF 7, ECF 8, ECF 9. To the extent those assertions fall within the scope of his complaint, the court has considered them and will address any relevant facts below. However, to the extent Nelson-El makes unrelated claims against different defendants and wishes to sue them as well, he must do so in separate lawsuits. "Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).

the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Nelson-El has sued three defendants for injunctive relief and monetary damages related to his participation in the Recovery While Incarcerated drug rehabilitation program (the Program) at the Westville Correctional Facility (WCF). Nelson-El begins by alleging his First Amendment rights were violated when he was removed from the Program in retaliation for speaking out against the way it is being run. "To prevail on his First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). "Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners." *Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010)).

Nelson-El alleges he approached Marlene Elkins-Watts (Watts),[2] the Program's director, in July of 2018 with concerns that other inmates she had assigned to high-level positions within the Program were spreading false rumors about his suspected drug

---

[2] Although Nelson-El initially lists her as Marlene Elkins-Watts, he refers to her simply as Watts throughout the rest of his complaint, so the court will follow suit.

2

use. In response, Watts accused Nelson-El of "dividing staff against each other" and breaking protocol by not first addressing those concerns with his primary counselor, Alexandria Bucher. ECF 2 at 4. Watts verbally berated Nelson-El and ultimately terminated his unofficial mentorship position due to this alleged breach.

Then, in August of 2018, during a question and answer session following a lecture given by Bucher to inmates of the Program as part of a group therapy session, Nelson-El publicly voiced his general concerns related to Watts's enforcement of various Program disciplinary policies. Specifically, Nelson-El expressed his opinion that Watts's practice of "mass punishing and obviating everyone's recovery plan" due to the actions of a select few was arbitrary, violated IDOC policy, ran afoul of proper due process, and "created a hostile environment amongst the [Program inmates]." ECF 2 at 6. Bucher informed Watts that he had done so later that afternoon, falsely indicating that Nelson-El had also told her to "shut up" when she attempted to interrupt him. *Id*. Watts responded by using profane and threatening language to verbally berate all of the inmates involved in the Program, and she specifically confronted Nelson-El to reprimand him for publicly questioning her directorial decisions. According to Nelson-El, Watts removed him from the Program the next day in retaliation for expressing those concerns. As a result, he was reclassified and moved to the "worst section of the prison" which was run by Watts's husband, a unit team manager and correctional officer at WCF. ECF 2 at 8. He was also restricted from participating in the Program for 180 days and prevented from getting an institutional job for 90 days. Shortly after the incident, Watts impeded and censored Nelson-El's access to the mail and kiosk systems

so that he had difficulty communicating with his family or writing letters with his concerns about the Program to Watts's supervisor. Nelson-El admits, however, that his letters have "recently" been received and answered by the Assistant Director of Addiction Recovery Service. ECF 2 at 9.

Based on these allegations, Nelson-El has stated a claim for First Amendment relation against Watts in her individual capacity for compensatory and punitive damages stemming from Nelson-El's August 2018 removal from the Program.

Additionally, Nelson-El, who is African-American, alleges Watts violated his Fourteenth Amendment rights when she applied different standards to the removal process because of his race. "Unless it is narrowly tailored to serve a compelling state interest, racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently than persons of a different race and that the state actor did so purposefully." *Id.*

Nelson-El claims that, after Watts discovered he had aired his grievances during the group therapy session, she removed him from the Program without warning based on those accusations alone and later precluded him from getting back in. On the other hand, Caucasian inmates who "actually got into trouble" for similar or worse violations of Program rules were given warnings before being removed and were allowed to "get right back into the [P]rogram without any problems." ECF 2 at 10. He witnessed Watts allow Caucasian workers to rotate back into high-ranking positions—receiving second

and third chances even after they had been terminated initially—but African-Americans were not afforded that option. Giving Nelson-El the inferences to which he is entitled at this stage, the complaint plausibly suggests Watts applied different standards to the removal process and refused to allow Nelson-El back into the Program on the basis of his race, which states a claim under the Equal Protection Clause of the Fourteenth Amendment. He may proceed against Watts in her individual capacity for compensatory and punitive damages on this claim.

That said, while Nelson-El repeatedly references Watts's use of profane, derogatory, and racially insensitive language and her tendency to promote, condone, and/or ignore the discriminatory behavior of Caucasian inmates within the Program, these allegations do not state a claim. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 446 (7th Cir. 2009) (noting that the behavior of a Caucasian guard who hung a noose from the ceiling and made "crazy" eyes at an African-American inmate fell "well short" of violating the Constitution). Although it is "unprofessional and deplorable," using racially derogatory language does not violate the Constitution. *DeWalt*, 224 F.3d at 612 ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").

As to Bucher, Nelson-El has not plausibly alleged facts demonstrating she deprived him of any First or Fourteenth Amendment rights. Nelson-El complains Bucher broke the Program's conduct rules when she interrupted him while he was

5

trying to express his concerns during the question and answer session, violated his confidentiality rights by relaying those concerns to Watts without his consent, and fabricated "material facts" when she informed Watts he had told her to shut up. But violating the Program's rules does not implicate First Amendment concerns. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Moreover, nothing in the complaint suggests she participated in any form of racial discrimination. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [Constitutional] violations are responsible."). Thus, the claims against Bucher will be dismissed.

Finally, Nelson-El asserts claims against Watts and Warden Sevier for an injunction ordering "defendants not to discriminate [any] more against opposite races and no longer use retaliatory actions against Nelson-El." ECF 2 at 13. Similarly, his motion for injunctive relief—which the court has analyzed in conjunction with his complaint—requests the enforcement of "equitable treatment" within the Program and the cessation of retaliation and/or discrimination by Watts and her "connections."³ ECF

---

³ Nelson-El's motion also requests an order directing Watts to "credit him the appropriate time and accolades for the time he spent in the Program" and Watts's temporary removal as director of the Program. ECF 4 at 5. Even generously construing these requests as part of his complaint, he has not stated a claim for injunctive relief. As to the vague reference to "time and accolades," Nelson-El has not adequately explained what it is that he has lost or how it could be restored. Likewise, temporarily removing Watts from her position as director of the Program would run afoul of the Prison Litigation Reform Act because doing so would not be the least intrusive means to correct the alleged issues. *See Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (internal quotation marks omitted); *see also* 18 U.S.C. § 3626(a)(1)(A).

.

4 at 5. A complaint states a claim for equitable relief when there is a non-conjectural likelihood of "substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (*citing O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury . . . ." *Id*. (*citing Rizzo v. Goode*, 423 U.S. 362 (1976)). To justify injunctive relief, the threat of irreparable injury must be real, substantial, and immediate as opposed to speculative. *Id*. at 106–111. If a plaintiff does not allege that he is "realistically threatened" by a repetition of events from which he suffered a past harm, "then he has not met the requirements for seeking an injunction in federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Id*. at 109.

Here, with regard to potential future discrimination, the court notes that Nelson-El is no longer a participant in the Program. His complaint does not suggest that he currently interacts with Watts, her staff, or any of the trustee inmates in the Program. He does not request reinstatement to the Program as a form of injunctive relief. Thus, it is not reasonable to infer that he will be subjected to additional discrimination by Watts. And, although his recently filed affidavits describe what he refers to as systemic discrimination, nepotism, and cronyism at WCF and set forth a litany of new, unrelated issues within the prison that he attributes generally to racism, he does not plausibly link any of those allegations to Watts in a way that would serve to establish a realistic, non-

conjectural threat of future discrimination.[4] ECF 7, ECF 8. As such, Nelson-El's fears of future discrimination at the hands of or by behest of Watts are little more than speculation and do not provide a basis for injunctive relief. *See City of Los Angeles*, 461 U.S. at 106–111 (irreparable injury must be real, substantial, and immediate).

Turning to Nelson-El's fears of future retaliation, even with regard to First Amendment retaliation cases—which recognize the dangers of chilling speech and generally presume irreparable harm flowing from it—the Seventh Circuit has acknowledged that vague, uncertain retaliatory conduct is not appropriate for injunctive relief. *See Capeheart v. Terrell*, 695 F.3d 681, 685–86 (7th Cir. 2012). In *Capeheart*, the court declined to reach the merits of the plaintiff's claim for prospective relief because it was "too speculative, the prospect of similar harms too remote." *Id.* at 684–85. Noting that she had not shown she was in "immediate" danger of suffering future injuries, the court stated:

> We are concerned about [the plaintiff's] speech being chilled, but we cannot entertain her claim based on her outlook alone; we must find a solid basis for her apprehension in the record. . . . [W]e recognize that [her] retaliation claims are serious, and our intention is not to belittle them. The question for us now, however, is whether the prospect of retaliation by [the defendants] is more than conjecture. We conclude that it is not.

*Id.* at 685–86.

---

[4] Again, as noted in footnote 1 above, if Nelson-El believes he has claims against different defendants based on unrelated matters, he may bring them before the court in a separate lawsuit. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).

In this case, Nelson-El alleges he was retaliated against by Watts when he was removed from the Program and transferred into the worst section of the prison. However, his complaint does not mention any additional acts of retaliation related to that reclassification in the nearly eight months between the original incident and the filing of the instant lawsuit. As noted above, the allegations of discrimination and issues within the prison as a whole described in his affidavits do not provide a solid basis for Nelson-El's fears of future retaliation by Watts. *See City of Los Angeles*, 461 U.S. at 109 (if no allegations of realistic threats "by a repetition of events from which he suffered a past harm" are made, then injunctive relief is not warranted). Nelson-El also alleges his kiosk and mail accounts were being impeded and censored by Watts's "connections in the administration," but he admits that "all letters [he] wrote concerning the problems were answered by David Reid [IDOC's] Assistant Director of Addiction Recovery Service" and that copies of letters he sent to the Governor of Indiana have recently been received by him. ECF 2 at 9. In fact, documents attached to his affidavit confirm that the Governor, Reid, and William K. Wilson, the IDOC Executive Director of Adult Operations, have received, forwarded and/or responded to several of Nelson-El's letters between October of 2018 and February of 2019. ECF 8 at 19–25. It is undisputed that Nelson-El has already aired his concerns publicly, submitted official grievances, and filed multiple pleadings, motions, and affidavits in this lawsuit. Despite a general reference in his affidavit to "problems with my mail" and "letters not being sent out," the complaint itself does not plausibly allege that he is being prevented from raising additional concerns. Given the record currently before the court, Nelson-El's

9

apprehension of potential future retaliation related to the airing of his issues with Watts appears to be conjectural in nature and not appropriate for prospective injunctive relief. *See Capeheart v. Terrell*, 695 F.3d at 685–86. Thus, Nelson-El's claims for injunctive relief will be dismissed. And, because he has sued Warden Sevier "strictly and solely" in his official capacity "for declaratory and injunctive relief purposes only," no claims remain pending against Warden Sevier. ECF 2 at 12.

This leaves Nelson-El's request for immediate injunctive relief. ECF 4. To obtain a preliminary injunction, the moving party must first show (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Here, Nelson-El has not met his initial burden of showing that a preliminary injunction enjoining prospective discrimination and/or retaliation and enforcing equitable treatment within the Program is warranted because he has not alleged sufficient facts showing a threat of irreparable injury that is real, substantial, and immediate as opposed to speculative. As explained in detail above, all claims for injunctive relief are being dismissed. Thus, he has no chance of success on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").[5]

For these reasons, the court:

(1) GRANTS the motions to supplement (ECF 5, ECF 6);

(2) GRANTS Andre Nelson-El leave to proceed against Marlene Elkins-Watts in her individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment when she removed him from the Recovery While Incarcerated Program in August of 2018 in response to his oral complaints about her disciplinary policies and practices;

(3) GRANTS Andre Nelson-El leave to proceed against Marlene Elkins-Watts in her individual capacity for compensatory and punitive damages for discriminating against him in violation of the Equal Protection Clause of the Fourteenth Amendment when she applied different standards to the removal and reinstatement process based on his race;

(4) DISMISSES all other claims;

(5) DISMISSES Warden Mark Sevier and Alexandria Bucher;

(6) DENIES the motion for injunctive relief (ECF 4);

(7) DIRECTS the clerk and the United States Marshals Service, pursuant to 28

---

[5] The court also notes that, although Nelson-El has plausibly stated a claim for First Amendment retaliation against Watts for monetary damages, his likelihood of success on the merits of that claim is slim as well. Openly criticizing a program administrator's policies in front of other inmates has been found to be disruptive to legitimate penological interests, especially where an alternative means for expressing complaints exists. *See Watkins*, 599 F.3d at 797–98 (finding inmate's "public challenge" to law librarian's directives was unprotected as a matter of law). Based on the facts alleged in the complaint, it is likely that this claim falls squarely within the confines of *Watkins*.

11

U.S.C. § 1915(d), to issue and serve process, along with a copy of the complaint (ECF 2) and this order, on Marlene Elkins-Watts at the Indiana Department of Correction; and

(8) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Marlene Elkins-Watts respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 6, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT